In the Matter of the Claim of ALICE M. TOWNSEND and EMILY M. COPP, Respondents, *v.* THE CITY OF NEW YORK, Appellant, under Section 42, Chapter 724 of the Laws of 1905, as Amended by Section 9, Chapter 314 of the Laws of 1906.

DAMAGE COMMISSION No. 4.

Third Department, November 14, 1917.

Municipal corporations — eminent domain — taking of land for New York city water supply (Ashokan reservoir) — damage to woodland by removing station and railroad at a distance therefrom.

Claim for damages, by reason of the fact that by the building of the Ashokan reservoir the railroad and station had been located a mile and a half or two miles further from the claimant's tract of woodland than it

was before, examined and *held*, that the determination of the Commission that said land had no substantial value for lumbering purposes, and that it had not been damaged, should be confirmed.

APPEAL by the City of New York from an order of the Supreme Court, made at the Ulster Special Term and entered in the office of the clerk of the county of Ulster on the 9th day of June, 1917, denying a motion to confirm the second separate report of Damage Commission No. 4, so far as it affects the claim of the respondents, and sending said claim before another commission.

*Lamar Hardy, Corporation Counsel* [*William McM. Speer*, special counsel], for the appellant.

*Brown & Slosson* [*Arthur A. Brown* of counsel], for the respondents.

KELLOGG, P. J.:

The claim was for $20,000 damages by reason of the fact that by the building of the Ashokan reservoir the railroad and station had been located a mile and a half or two miles further from the claimants' tract of 1,700 acres than they were before. None of the claimants' property was taken, but the contention is that the value of their property was directly or indirectly decreased by reason of the execution of the plan for the additional water supply of the city under section 42 of chapter 724 of the Laws of 1905, as amended by section 9 of chapter 314 of the Laws of 1906. Some of the land was in the valley, a great part of it extended back and upon the Catskill mountains. The claimants' experts considered that the property was valuable for lumbering purposes and that it was injured from $20,000 to $32,000 by the fact that the railroad and station were about two miles further from the property than they were before. The State had from time to time bought adjoining properties, some similarly situated and of substantially equal value for any practical purpose, at from $2.50 to $5 per acre. This property, as a game and fish preserve, was worth more than the State paid for the lands mentioned, but for any other purpose there would be no substantial difference in the value. If the tract is to be used as a fish and game preserve, it is evident that it could not be

lumbered, and it is apparent that its value could not be materially decreased because of the removal of the railroad and station. It would seem that for a game preserve the removal would be to the advantage rather than to the detriment of the property.

The city's evidence tended to show that the land had no substantial value for lumbering purposes, and that there was not enough wood upon it to warrant lumbering at a profit. The Commission, who were practical men, viewed the property, and upon the whole case they determined that the claimants' property had not been damaged. It is evident that when the Commission examined the property they discovered that the evidence of the plaintiffs' experts was exaggerated and unworthy of credit, and we conclude they were justified in paying but little attention to that testimony. The Special Term set aside the award on the ground that the removal of the railroad station to a greater distance from the land than existed before constituted some injury. But the Commission had before it not only the testimony presented at the Special Term, but also the benefit of a view and inspection of the property, and had better means of determining whether the property had been damaged than was before the Special Term.

We conclude that the findings of the Commission were well within the evidence and that its determination should be confirmed. The order of the Special Term should, therefore, be reversed, with ten dollars costs and disbursements, and an order entered confirming the report of the Commission, with ten dollars costs and disbursements.

All concurred.

Order of the Special Term reversed, with ten dollars costs and disbursements, and order directed confirming report of the Commission, with ten dollars costs and disbursements.